PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM REIDER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS, LLC, a Delaware limited liability company; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 2:17-cv-556<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jim Reider ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Express, LLC ("Express" or "Defendant") and, based on personal knowledge as to his own actions and upon information and belief, based upon the investigation of counsel, as to the actions of Defendant, alleges as follows:

## I.   INTRODUCTION & OVERVIEW OF CLAIMS

1. Plaintiff bring this action on his own behalf and on behalf of similarly situated consumers who purchased items from Defendant and were charged a "Shipping & Handling" charge. These charges violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*. because, in contravention of established ethical principles, Defendant's shipping/handling charges were not reasonably related to Defendant's costs of delivering or shipping the items to consumers but instead greatly exceeded those costs.

2. Defendant's delivery charges also violated the above statutes' prohibitions against fraudulent and/or deceptive practices. They deceived consumers, who expect that shipping/handling charges are reasonably related to a company's actual costs of shipping and delivery.

3. Additionally, the arbitration provision contained in Defendant's website, www.express.com, is unenforceable because there is no mutual consent for the provision; the terms allow Defendant unilaterally to change or modify the terms at any time, and the provision requires consumers to bear their own attorneys' fees.

## II.   JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from Defendant's home state, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

///

5. This Court has jurisdiction over the Defendant named herein because Defendant has sufficient minimum contacts with California and/or otherwise intentionally avails itself of the laws and markets of California, through the promotion, sale, marketing and distribution of its goods and services in California, to render the exercise of jurisdiction by the California courts permissible.

6. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

### III.   PARTIES

7. Plaintiff Jim Reider is an individual adult resident and citizen of California, residing in Orange County, California.

8. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant Express, LLC is a Delaware limited liability company, with its principal place of business located at One Express Drive, Columbus, Ohio 43230. As such, Defendant is a citizen of Delaware and Ohio. Plaintiff is informed and believes, and upon such information and belief alleges, that at all times relevant, Defendant conducted business in the State of California and in Orange County, within the Central District of California.

9. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

10. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course

and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Express, LLC, and DOE Defendants will hereafter collectively be referred to as "Defendant").

## IV.  FACTUAL BACKGROUND

### A.  Background of the Action

11.  This action is brought by Plaintiff on behalf of himself and similarly situated consumers who were charged excessive, deceptive, unfair and unethical fees for delivery of products by Defendant during the period of the applicable statutes of limitations for Class members in California (the "Class Period").

12.  Under the brand name "Express," and through its website, www.express.com, Defendant markets assorted products, but then charges an additional fee for "Shipping & Handling" that is far in excess of the actual cost of shipping the product to consumers.

15.  These excess shipping and delivery charges are unfair, unethical and/or in violation of public policy because it violates business ethics to charge more for shipping or delivery than a company's costs of shipping, postage and handling.

16.  The basis for the allegation that it is unethical to charge more for shipping or delivery than a company's costs of shipping, postage and handling comes, in part, from established ethical principles recognized by the Direct Marketing Association("DMA"), the leading industry association for companies that, like Defendant, market directly to consumers.

17.  DMA has published principles of ethical business practices for such marketing activities. Direct Marketing Association's Guidelines for Ethical Business Practices, revised May 2011 ("DMA Ethical Guidelines").  A true and correct copy of the DMA Ethical Guidelines is attached hereto as Exhibit 1.  (A true and correct copy of the DMA Ethical Guideline, revised January 2014, is attached hereto as Exhibit 2.)

/ / /

18. These Ethical Guidelines "are intended to provide individuals and organizations involved in direct marketing in all media with generally accepted principles of conduct." *Id.* at 2. They "reflect DMA's long-standing policy of high levels of ethics and the responsibility of the Association, its members, and all marketers to maintain consumer and community relationships that are based on fair and ethical principles." *Id*. (emphasis added).

19. In addition, DMA states that the Ethical Guidelines "are intended to be honored in light of their aims and principles. All marketers should support the guidelines in spirit and not treat their provisions as obstacles to be circumvented by legal ingenuity." *Id*.

20. DMA has also published a companion volume to its Ethical Guidelines called *Do the Right Thing: A Companion to DMA's Guidelines for Ethical Business Practice* (Revised January 2009) ("*Do the Right Thing*"). A true and correct copy of this document is attached hereto as Exhibit 3. That volume is intended to "give[] direct marketers advice on how to assure their business practices comply with" the Ethical Guidelines. *Do the Right Thing* at 2.

21. As DMA recognizes, under current ethical standards, shipping and delivery charges such as those of Defendant are unethical.

22. In both the 2014 and 2011 editions of the DMA Ethical Guidelines, Article#11 states: "Postage, shipping or handling charges, if any, should bear a reasonable relationship to actual costs incurred." Ex. 1 at 1; Ex. 2 at 12.

23. With respect to Article #11, DMA's companion volume *Do the Right Thing* states: "When figuring shipping and handling fees, it is important to reflect the costs as accurately as possible so that your customers or prospects are not likely to view these fees as a company 'profit center.'" Ex 3 at 12-13.

24. In 2003, DMA issued guidance "to assist cataloguers and other direct marketers in establishing charges for shipping, handling, and other fulfillment costs." http://www.dmaresponsibility.org/cgi/disppressrelease?article=440; a true and correct

- 4 -
CLASS ACTION COMPLAINT

copy of this document is attached hereto as Exhibit 4. DMA stated that this new guidance "provides additional direction beyond article #11 of The DMA's Guidelines for Ethical Business Practice, which states: "Postage, shipping, or handling charges, if any, should bear a reasonable relationship to actual costs incurred." *Id.*

25. This guidance stated, "Companies should determine what costs will be covered, and substantiate their method …. Ideally, a fulfillment cost study should be done with the assistance of an impartial outside expert." *Id.*

26. The guidance also stated, "Exact charges should be disclosed clearly and conspicuously in advance of the order. … When ordering online, shoppers should receive shipping information early in the order path." *Id.*

27. The current version of DMA's ethical guidance on shipping charges is displayed on its web page entitled, "Guidance for Establishing and Substantiating Shipping and Handling Charges," (a true and correct copy of this document is attached hereto as Exhibit 5), where it states:

> Some marketers take the position that so long as there is clear disclosure on how much the consumer pays in total for the shipped product, the amount the marketer charges for shipping and handling should not matter. There appears to be a trend by law enforcement agencies, however, to insist that a consumer who is charged shipping and handling costs should be paying a fee reasonably based on the marketer's cost. The latter position is consistent with existing DMA guidelines.
>
> …. Your goal should be not to charge consumers as a whole more than you pay in total.

28. Defendant's delivery charges for products violate the ethical principle described above because they are not reasonably related to Defendant's costs; to the contrary, they include profit and make shipping and handling a profit center.

29. The statement by DMA regarding the trend among law enforcement agencies to insist that a consumer who is charged shipping and handling costs should be

paying a fee reasonably based on the marketer's cost shows that the practice of charging more for shipping than a marketer's costs violates public policy.

30. Moreover, as DMA recognizes, charging a delivery charge that exceeds a company's delivery costs is deceptive because consumers expect that delivery charges are calculated based on a company's costs. In its "Guidance for Establishing and Substantiating Shipping and Handling Charges," Ex. 5, DMA states:

> Most direct marketers charge consumers for delivery of products. What the actual charges are and how these charges are calculated are significant issues for consumers.
>
> Setting shipping and handling costs is not as easy as it might, at first, seem. In a marketplace of sophisticated consumers and close scrutiny by regulators, direct marketers must be very careful. Positive consumer perception of your charges is critical to your success.

31. In its 2003 press release announcing this guidance, DMA's president echoed this statement:

> "In a marketplace of sophisticated consumers and close scrutiny by regulators, direct marketers must be very careful. Positive consumer perception of all charges, especially shipping and handling, is critical to the continued success and growth of the industry," said H. Robert Wientzen, president & CEO, The DMA.
>
> "In short, shipping and handling costs should be fair, reasonable, clear, and justifiable," said Wientzen.

32. By not informing consumers that its delivery charges greatly exceeded its costs, Defendant engaged in deception by means of the concealment, suppression or omission of material facts.

33. For these reasons, Defendant's delivery charges are deceptive, unethical and/or unfair.

///

///

**B.     Facts of Plaintiff's Claims Against Defendant**

34.  Plaintiff purchased a product from Defendant and was unfairly, unethically, deceptively and illegally charged for shipping and handling in amounts that exceeded Defendant's costs of shipping and delivery.

35.  Specifically, in 2016, Plaintiff purchased a small, lightweight product from Defendant Express via its website, www.express.com. For the product Plaintiff was charged $17.93 plus tax, while he was charged $8.00 for "Shipping & Handling".

36.  The amount Plaintiff was charged for shipping and handling had no reasonable relationship to, and, in fact, greatly exceeded, Defendant's costs incurred for shipping and delivery and constituted improper and unethical profit for Defendant. In fact, according to the calculator found at https://postcalc.usps.com/mobile/default.aspx, the actual cost of shipping and delivery was less than half of the price charged by Defendant.

37.  Following his purchase, Plaintiff's counsel reviewed Defendant's website and further reviewed its Terms & Conditions. The arbitration provision contained in the website is unenforceable because there is no mutual consent for the provision; the terms allow Defendant unilaterally to change or modify the terms at any time, and the provision effectively requires consumers to bear their own attorneys' fees.

## V.     CLASS ACTION ALLEGATIONS

38.  Plaintiff brings this class action pursuant to Rules 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> "**All persons in the State of California who purchased products from www.express.com and were charged a fee for shipping, handling, and/or delivery within the period of the applicable statutes of limitations up to the date of trial (the "Class").**

39.  Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment.

- 7 -
CLASS ACTION COMPLAINT

40. Specifically excluded from the proposed Class is Defendant, its officers, directors, and employees. Also excluded from the proposed Class is the Court, the Court's immediate family and Court staff.

41. **Numerosity.** Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are thousands of persons in the Class.

42. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

43. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased products from Defendant's website, www.express.com, were charged the "Shipping & Handling" charges for purchases from that website, and were subject to the arbitration provisions contained in the Terms & Conditions on that website.

44. **Existence and Predominance of Common Questions of Law and Fact.** There are central and substantial questions of law and fact common to all Class Members that control this litigation and predominate over any individual issues. Included within the common questions are the following:

   i) Whether Defendant charged consumers an amount for shipping/handling for delivery of products;
   
   ii) Whether the amount Defendant charged consumers for shipping/handling exceeded Defendant's actual costs for shipping or delivering the products to consumers;

|   |   |   |
|---|---|---|
| 1 | iii) | Whether Defendant charged consumers for shipping/handling of product more than it paid for such shipping or delivery; |
| 2 | iv) | Whether Defendant's actions in charging more for shipping/handling than its costs were unethical; |
| 3 | v) | Whether Defendant's actions in charging more for shipping/handling than its costs violated the unfairness provisions of the UCL; and |
| 4 | vi) | Whether Defendant's actions in charging more for shipping/handling than its costs violated provisions of the CLRA. |

45. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

  i) Given the size of the claims of individual Class Members, as well as the resources of Defendant, few, if any, could afford to seek legal redress individually for the wrongs alleged herein;

  ii) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense, and will ensure uniformity of decisions;

  iii) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments, and would create a burden on the court system;

  iv) Without a class action, Class Members will continue to suffer as a consequence of Defendant's illegal and predatory conduct, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and the Classes are entitled to appropriate civil penalties. This action

presents no difficulties that will impede its management by the Court as a class action.

46. For the above reasons, this action is maintainable as a class action pursuant to Fed. R. Civ. P. 23.

## VI. DEFENDANT'S VIOLATIONS OF THE UCL, CLRA, AND LAW APPLICABLE TO ARBITRATION PROVISIONS

**A. Violations of the UCL**

47. The UCL outlaws "any unlawful, unfair or fraudulent business act or practice …." (Business & Prof. Code § 17200.)

48. An unfair business practice under the UCL "is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" (*Evenchik v. Avis Rent A Car Sys., LLC*, 2012 WL 4111382, at *8 (S.D. Cal. Sept. 17, 2012) *(quoting McDonald v. Coldwell Banker,* 543 F.3d 498, 506 (9th Cir.2008) (in turn quoting *People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal.App.3d 509, 530, 206 Cal.Rptr. 164 (1984)).)

49. Defendant's conduct as alleged herein has violated the unfairness prong of the UCL because it is unethical. In addition, it violates established public policy as recognized by DMA in citing law enforcement authorities in support of its ethical guideline against excessive delivery charges. It also violates public policy as recognized by the Federal Trade Commission in enforcing Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). In *In the Matter of Bill Crouch Foreign, Inc., d/b/a Bill Crouch Imports, Inc. (Formerly Mazda of Boulder, Inc.)*, 96 F.T.C. 111, 1980 WL 339028, the FTC entered into a consent order that prohibited a car dealer from violating the FTC Act by charging an amount for "Freight" that "exceeded respondent's actual outlays to third parties for the transportation of new automobiles." *Id.* at *2. By bringing that proceeding under Section 5(a) and entering into a consent order, the FTC showed that its interpretation of Section 5(a) is that such charges violate the Act.

///

50. Additionally, the Ninth Circuit has ruled that courts are warranted in applying a test for unfairness that "involves balancing the harm to the consumer against the utility of the defendant's practice." (*Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).) Under this test, Defendant's shipping/handling charges violate the UCL because the harm to the consumer outweighs the utility of Defendant's practice, which has no utility.

**B.** **Violations of the CLRA**

52. The CLRA, Civil Code Section 1770, provides, in pertinent part:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: ….

(9) Advertising goods or services with intent not to sell them as advertised.

…..

(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

….

(19) Inserting an unconscionable provision in the contract.

53. Defendant's practices violate subparagraph (9) because Defendant represents that its shipping/handling charges have the characteristics that consumers expect, namely, that they are reasonably related to Defendant's actual costs of shipping.

54. Defendant's practices violate subparagraph (14) because they include practices that violate established ethical standards.

55. Defendant's practices violate subparagraph (19) because they are unconscionable in that they are contained in a contract of adhesion, which consumers cannot negotiate but may only accept or reject, and because they violate established ethical standards.

/ / /

/ / /

## C. Violations of the Law regarding Arbitration Provisions

56. Additionally, Defendant's website, www.express.com, contains Terms & Conditions which purport to require mandatory arbitration of any disputes and contain a class action waiver. Those provisions are unenforceable for a number of reasons.

57. First, there is no mutual assent because the provisions are contained in a "browsewrap" contract that does not require customers to read and assent to the terms prior to making a purchase. (*See Nghiem v. Dick's Sporting Goods, Inc., et al.*, (C.D. Cal. July 5, 2016) (denying a motion to compel arbitration of similar browsewrap agreement).)

58. Second, Defendant's Terms & Conditions allow Defendant unilaterally to change or modify the terms at any time, which effectively allows Defendant to "opt-out" of any obligation to arbitrate. (*See Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425, 1457 (2012) (invalidating arbitration provision that authorized the drafter to "pick and choose" the claims it wanted to arbitrate).)

59. Third, the provisions require consumers to bear their own attorneys' fees in violation of California law in that they make no provision for Express to pay those fees. (*See Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 919 (2015) (arbitration agreement unenforceable where it "would have a substantial deterrent effect in [the consumer's] case").)

60. Accordingly, if and to the extent that Defendant claims that its arbitration and/or class waiver provisions are enforceable against Plaintiff and the class, Plaintiff and the class seek declaratory relief declaring such provisions unconscionable and unenforceable.

/ / /
/ / /
/ / /
/ / /
/ / /

# VII. CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## UNFAIRNESS IN VIOLATION OF THE UCL
**(Plaintiff and the Class Against All Defendants)**

61. The foregoing paragraphs are alleged herein and are incorporated herein by reference.

62. The UCL outlaws "any unlawful, unfair or fraudulent business act or practice …." (Business & Professions Code § 17200.)

63. Pursuant to the unfairness prong of the UCL, Defendant has a duty not to engage in an unfair business act or practice.

64. Defendant breached that duty by engaging in acts or practices that are unethical.

65. Defendant breached that duty by engaging in acts or practices that violate established public policy as recognized by the FTC and by DMA.

66. Defendant breached that duty by engaging in acts or practices whose harm outweighs their utility.

67. Plaintiff and the Class purchased products from Defendant via its website, and were charged for "Shipping & Handling" fees that exceeded Defendant's costs of shipping and delivery and are thereby entitled to have restored to them the sums of money that exceeded such costs.

68. Injunctive relief is necessary and proper to compel Defendant to cease its violations of the UCL alleged herein.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE CLRA
**(Plaintiff and the Class Against All Defendants)**

69. The foregoing paragraphs are alleged herein and are incorporated herein by reference.

70. The CLRA, Civil Code Section 1770, provides, in pertinent part:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: ….

(9) Advertising goods or services with intent not to sell them as advertised.

…..

(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

….

(19) Inserting an unconscionable provision in the contract.

71. Defendant's practices violate subparagraph (9) because Defendant represents that its shipping/handling charges have the characteristics that consumers expect, namely, that they are reasonably related to Defendant's actual costs of shipping.

72. Defendant's practices violate subparagraph (14) because they include practices that violate established ethical standards.

73. Defendant's practices violate subparagraph (19) because they are unconscionable in that they are contained in a contract of adhesion, which consumers cannot negotiate but may only accept or reject, and because they violate established ethical standards.

74. Plaintiff and the Class purchased products from Defendant via its website, and were charged for "Shipping & Handling" fees that exceeded Defendant's costs of shipping and delivery and are thereby entitled to have restored to them the sums of money that exceeded such costs.

75. Injunctive relief is necessary and proper to compel Defendant to cease its violations of the UCL alleged herein.

/ / /

/ / /

/ / /

/ / /

# THIRD CAUSE OF ACTION
# DECLARATORY RELIEF
### (Plaintiff and the Class Against All Defendants)

76. The foregoing paragraphs are alleged herein and are incorporated herein by reference.

77. Defendant's website, www.express.com, contains Terms & Conditions which purport to require mandatory arbitration of any disputes and contain a class action waiver. Those provisions are unenforceable for a number of reasons.

78. First, there is no mutual assent because the provisions are contained in a "browsewrap" contract that does not require customers to read and assent to the terms prior to making a purchase. (*See Nghiem v. Dick's Sporting Goods, Inc., et al.*, (C.D. Cal. July 5, 2016) (denying a motion to compel arbitration of similar browsewrap agreement).)

79. Second, Defendant's Terms & Conditions allow Defendant unilaterally to change or modify the terms at any time, which effectively allows Defendant to "opt-out" of any obligation to arbitrate. (*See Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425, 1457 (2012) (invalidating arbitration provision that authorized the drafter to "pick and choose" the claims it wanted to arbitrate).)

80. Third, the provisions require consumers to bear their own attorneys' fees in violation of California law in that they make no provision for Express to pay those fees. (*See Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 919 (2015) (arbitration agreement unenforceable where it "would have a substantial deterrent effect in [the consumer's] case").)

81. An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and Defendants, on the other hand, concerning their respective rights and duties under the arbitration provisions of the Terms & Conditions contained on Defendant's website. Plaintiff and the Class contend that the arbitration provisions are invalid and unenforceable for the reasons set forth above. Plaintiff is informed and

believes, and upon such information and belief alleges that Defendant believes and contends that the arbitration provisions of the Terms & Conditions contained on Defendant's website are valid and enforceable. Plaintiff and the Class desire a determination of their rights and duties under the arbitration provisions of the Terms & Conditions, and a declaration that those provisions are invalid and unenforceable as to Plaintiff and the Class.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the putative Class request the following relief:

1. An order for certification of the putative Class;

2. Judgment awarding Plaintiff and the Class compensatory damages, including a full refund of the amount of shipping and delivery charges they paid in excess of Defendant's actual costs of shipping and delivery;

3. Judgment awarding restitution to Plaintiffs and the Class;

4. Judgment entering preliminary and permanent injunctive relief barring Defendants from continuing the unfair and unethical practices alleged herein;

5. For a declaratory judgment determining the rights and obligations between Plaintiff and the Class, on the one hand, and Defendants, on the other hand, concerning their respective rights and duties under the arbitration provisions of the Terms & Conditions contained on Defendant's website, including a declaration that the arbitration provisions are invalid and unenforceable;

6. Reasonable attorneys' fees and costs; and

7. Such other and further relief as this Court may deem appropriate.

Dated: January 23, 2017      PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorneys for Plaintiff and the Class

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and Class Members hereby demand trial by jury.

Dated: January 23, 2017            PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorneys for Plaintiff and the Class